## CHICAGO, ST. PAUL, MINNEAPOLIS AND OMAHA RAILWAY COMPANY v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 133.   Argued March 9, 10, 1910.—Decided April 4, 1910.

The acts of May 15, 1856, c. 28, 11 Stat. 9; March 3, 1857, c. 99, 11 Stat. 195, and § 13 of the act of July 12, 1876, c. 179, 19 Stat. 78, providing that mails should be transported over railroads constructed in whole or in part by aid of land grants at eighty per cent of the authorized price, apply to such transportation by companies which carry the mail over a leased line which was partly constructed by such aid, although the transporting company itself received no land grant aid from the Government.

A court does not overlook contentions advanced which are necessarily untrue if the proposition upon which its decision rests is true. The statement of such proposition answers opposing contentions.

The reduction in mail service which the Government exacts in return for land grants for building railroads attaches to all tracks including those subsequently built, and to all companies operating thereover.

43 C. Cl. 595, affirmed; 41 C. Cl. 518, approved.

THE facts, which involve the amount of compensation due for transportation of mail by a railroad company over a railroad constructed in part by grant of land from the Government, are stated in the opinion.

*Mr. Samuel A. Putman*, with whom *Mr. Charles W. Bunn* was on the brief, for appellant.

*Mr. John Q. Thompson*, Assistant Attorney General, with whom *Mr. Philip M. Ashford* was on the brief, for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

The question in this case is the legality of certain deductions made by the Postmaster General from the amount

which, it is contended, is due appellant for carrying the mails between Minneapolis, Minnesota, and Sioux City, Iowa, over postal route No. 121,045. The appellant sought to recover the sum of forty thousand dollars ($40,000). The Court of Claims gave judgment for only thirty-three hundred and eighty-nine dollars and fifty-three cents ($3,389.53), rejecting the balance of the claim on the authority of *Astoria & Columbia River Railway Company* v. *United States*, 41 Ct. Cl. 284.

The controversy turns upon the application of certain acts of Congress, granting parts of the public domain to appellant and to companies with which it has agreements. The acts provide that the United States mails shall be transported on such roads at such rates as Congress may by law direct. Act of May 15, 1856, 11 Stat. 9, c. 28; Act of March 3, 1857, 11 Stat. 195, c. 99. Subsequently it was provided as follows:

"SEC. 13. That railroad companies, whose railroad was constructed in whole or in part by a grant of land made by Congress on the condition that the mails should be transported over their road at such price as Congress should by law direct, shall receive only eighty per centum of the compensation authorized by this act." Act of July 12, 1876, 19 Stat. 78, 82, c. 179.

The postal route begins at Minneapolis and consists of land-aided and non-land-aided roads. The following diagram, taken from the Government's brief, though not drawn to any scale of measurement, exhibits with enough accuracy for illustration the aided and non-aided parts of the route and the companies which received aid.

It will be observed that appellant is the direct beneficiary of the road from St. Paul south 237.81 miles to a point north from a place marked as Le Mars. It used the other parts of the route under the contracts with the other companies, and it is found that from some time prior to October 1, 1900, appellant used the tracks of such other companies to "form a continuous route for the operation of its mail trains, made up of its own rolling stock and controlled and operated by its

own servants, between Minneapolis and Sioux City, except that within the last-named city it did not use the station of the Illinois Central Company, but had a station of its own." It is also

found that appellant operated its trains over the tracks of the Great Northern Company under a contract in writing with the predecessor of the latter company, the St. Paul, Minneapolis and Manitoba Railway Company, and operated its trains over the Illinois Central Company under a contract with the predecessor of that company, the Iowa Falls and Sioux City Railroad Company. By the first contract appellant is given "the

right and privilege to run such of its locomotives, engines, car and trains, handled by its own employés, as shall be reasonably necessary for the efficient and full transaction of its business to and from the city of Minneapolis, and all points on the second party's road, east of St. Paul over the *main track* of the first party as now constructed." It was provided that the amount of the monthly rental should be a sum of money equal to one-twelfth part of the annual interest at the rate of six and one-half per cent per annum on one-half the value of the property of the first party, which the second party is entitled to use under the contract. And in addition such proportion of cost of maintaining and repairing the properties, "as the number of wheels per mile" appellant should "run over the said property or any part thereof, bears to the whole number of wheels per mile run over the same." It was provided that the earnings of all local business done by appellant over the railroad should belong to the party of the first part, but the appellant was not obliged to do such business. The contract was to continue twenty-five years.

The contract of the appellant with the Iowa Falls and Sioux City Railway Company may be said, as far as the question in the case is concerned, to be substantially the same. Its provision as to the use of tracks is more comprehensive. It permits also appellant to do local business, sixty per cent of the gross receipts of which, however, are to be paid to the Iowa Falls Company. There is a provision for maintenance and repairs, based on car mileage. The rental stipulated is $450 per mile for the use of each mile of main track.

It is found that appellant had no part in the construction of the tracks of the Great Northern Company or of the Illinois Central Company, and received no benefit on account of their construction by grants of land or otherwise; that ever since the construction of the tracks the respective companies owning them have operated trains and transported United States mails over them, and that the use of the tracks by those companies does not appear to have been limited by appellants

using them; that the tracks of the Great Northern Company between · University Switch and St. Paul are a portion of postal route No. 141,004 between St. Paul and Fargo, North Dakota, and those belonging to the Illinois Central between Le Mars and Sioux City are a portion of postal route No. 143,021 between Dubuque and Sioux City, Iowa. That prior to October 1, 1900, the Postmaster General designated the line of railroad between Minneapolis and Sioux City as postal route No. 141,025, and has maintained it ever since, and that between that date and September 30, 1906, appellant has carried mails over such route, but the Postmaster General has allowed for the whole of the route only eighty per cent of the compensation allowed and fixed by law for similar service for non-land-granted roads. A table of reductions is given, showing the deductions for the periods mentioned, amounting in all to $33,301.17.

The contentions of the parties are foreshadowed by the facts which we have recited. It may be conceded, appellant says, that the grants of land to the companies to which they were made "completed contracts between them and the United States," and it may be further conceded, it is said, "that by these contracts privity was established between the United States and these various railroad companies." But succession to the obligation of the contract is denied because appellant "has not succeeded to the title or any part of the title of these respective roads, nor has it in any way directly or indirectly received any benefit from the respective grants or done any other thing which creates privity of contract between it and the United States or which makes it, in the language of the thirteenth section of the act of 1876, a railroad company 'whose railroad was constructed in whole or in part by a grant of land,' " etc.

This distinction is earnestly insisted on and is made the foundation of the argument of the appellant. It makes irrelevant, it is urged, the consideration of the obligations of the other companies, and by overlooking it the Court of

Claims fell into error in *Astoria & Columbia River Ry. Co.* v.
*United States, supra,* and continued the error in its judgment
in the case at bar. But did the Court of Claims overlook it?
It was urged in *Astoria & Columbia River.Ry. Co.* v. *United
States,* as it is urged in this, to justify the distinction that the
"owning and aided companies," to adopt counsel's designa-
tion, are and always have been "ready to perform all the
service due them under the terms of their contract with the
United States," and it seems to us that the Court of Claims
did not misunderstand or overlook the contention. A court
does not overlook a contention because it rests its decision
upon a proposition which, if true, the contention is not true.
To bring forward a proposition upon which the question to be
proved depends answers necessarily opposing propositions.
And this is what the Court of Claims did. It decided that the
power reserved to Congress was over the property, not alone
over the companies who owned it and extended to every use
of it, whether by the owning companies or any company
who received a right from them. That proposition, if true,
necessarily determined the judgment against the Astoria and
Columbia River Railway Company in the cited case. It is
opposed to the proposition decided in that case by the Circuit
Court of the United States for the District of Oregon, and
which is relied upon by appellant in this case. That case was
brought by the United States to enjoin the Astoria and
Columbia River Railway Company from charging for the
transportation of army supplies from Portland, carried by that
company over the tracks of the Northern Pacific Railroad
Company, which it used under a contract with the latter
company. The suit was based on the fact that the Northern
Pacific was a land-aided road. The injunction was refused.
The court sustained the contention which was made (and
which was repeated in the Court of Claims and is repeated
here), that the power reserved to Congress attached in effect
to the company, not to the property. The Circuit Court said:
"The defendant's use of the Northern Pacific Railroad track

between Portland and Goble does not affect the transportation due from the latter company to the plaintiff. It is still open to the latter to have its freight carried over every part of the railroad of the land grant company at fifty per cent of the regular rate. This is the extent of its right. And this right, as already appears, has not been affected by the use of a part of that company's track by the defendant company. It is a matter of no consequence to the plaintiff [United States] how many railroads use this particular track of the Northern Pacific Company, nor what their traffic rates are, so long as the latter company continues to afford all the facilities for transportation over every part of its road required by the plaintiff." *United States* v. *Astoria & C. R. R. Co.*, 131 Fed. Rep. 1006.

The order denying application for injunction was pleaded in the Court of Claims, as it appears from the opinion of the court, as *res judicata* of the "subject-matter" there involved, and therefore the full breadth of the contentions of the railroad company in the Circuit Court and of the decision of that court was considered by the Court of Claims, and all of the elements of decision and all the distinctions which depended upon them the court must have taken into account in rendering its decision.

We are brought then to the question whether the decision of the court was right. Certain concessions are made by appellant at the outset of the argument. It is conceded that the acceptance of the land grants by the "owned and aided companies" completed a contract between them and the United States, and that privity was established between them and the United States. That is privity (we use the word, as we presume that counsel does, in the sense of party for the United States, and the companies are parties, not successors, to rights or obligations) of contract, a personal obligation, that is, not an obligation which attached to the property and covered every use of it. This is necessarily what appellant means, though it is confused in discussion.

Appellant quotes the statute to show that the obligation is on the *companies*, not on the *roads*, as follows: "That railroad companies whose railroad was constructed . . . . by grant of land . . . shall receive only eighty per centum of the compensation authorized by this act."

And further, it points out, as we have seen, that it has not succeeded "to the title or any part of the title" of the roads, nor "directly or indirectly receives any benefit from the respective grants." And, finally, it urges that if appellant "is a mere licensee, owing no contractual duty as a corporate individual to the Government, owning no railroad property which is pledged to the Government as security for the performance of any duty, and operating its trains on the joint track in such manner as to interfere in no wise with its licensor in the transaction of its business and the performance of its contractual duty to the Government, it is difficult to understand how appellant can be held to fall within the terms of the thirteenth section of the act of 1876, or why it does not stand upon the same footing as any other company without privity with the United States."

This is stating by periphrase the simple proposition that there is a contract only between the United States and each of the aided companies, in which such company "has bound itself" [we quote from appellant's brief] "to operate trains for the transportation of the Government business." And "whenever" appellant says "one of these companies shall fail to perform its duty, whatever relief the United States may be entitled to must be sought by appropriate proceedings directed against the delinquent company." Appellant joins to this as a concession that the "railroad property" of an aided company "is pledged to secure the performance" of its obligation. In what way is not pointed out, or how the security can be availed of.

The opposite contention to that of appellant is, therefore, what it was decided to be by the Court of Claims, that the obligation is upon the property of an aided company, and

attaches to all of the uses of the property, whether by the "owned and aided companies" or any other company. We concur with the decision of the Court of Claims, and we think further discussion is not necessary, except to notice some of the reasons urged against the decision.

We have noticed and commented on one concession of appellant. Another is made, which we quote with its qualifications, as follows: "We do not contend that a land-aided road can be sold, either in whole or in part, so as to avoid its obligations to the government. To this extent we concede that the obligation runs with the railroad aided by land grant, but the act does not say that companies permitted simply to run trains on the road shall suffer reductions. They receive no aid from the grant, and are neither within the terms or the reason of the statute." Of course, the statute did not deal with other companies or with deductions. It would be very strange if it had. It either imposed a service on the companies or on the road as well. If on the companies alone, there would necessarily be exclusion of all others. If on the roads as well, it would comprehend all that used them. If a difference in degree of use or a participation in the use by other companies than the aided ones, had been intended it would have been expressed. The concession as to the effect of the sale or lease of the road is fatal. As we have already said, the obligation is either upon the aided companies, to be enforced by remedies against them, or it is on the property as well, and if on the property, necessarily on it by whatever company or person it is used.

It is further contended in the brief filed for the Great Northern that the condition of earning its grant was the building of a single track and it or its grantors, it is said, has provided several. It has therefore, it is further said, "a surplus of track capacity and, by contract, permits the Omaha [appellant] and other companies to run their trains over its tracks." To this it is only necessary to reply that the service that the Government reserved was coextensive with

the road as constituted under the grant and attached to as many tracks as should be used.

Again, it is urged that if the Omaha Company had built its own road there would be no assertion of a right to deduct from its mail pay, and that it is to run over the Great Northern, the latter not being made thereby less useful or efficient, is for its purpose equivalent to building its own road. An answer to this is contained in what we have said. We may add, however, that the appellant no doubt considered the advantages and disadvantages of the alternative presented before making its selection, but it could not have supposed, nor can we admit, that it could lessen rights in property because it could acquire like property for itself.

*Union Pacific* v. *Chicago &c. Ry. Co.*, 163 U. S. 564, and *Lake Superior & Mississippi R. R. Co.* v. *United States*, 93 U. S. 442, are cited as authorities against our conclusion. We content ourselves by saying that they have not that effect. On *United States* v. *Astoria Company*, 131 Fed. Rep. 1006, we have commented.

*Judgment affirmed.*